STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
FRANK D. KORTUM
Assistant United States Attorney
Asset Forfeiture Section
   Federal Courthouse, 14th Floor
   312 North Spring Street
   Los Angeles, California 90012
   Telephone: (213) 894-5710
   Facsimile: (213) 894-7177
   E-mail: Frank.Kortum@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SACV 14-00051-JLS(DFMx) |
| Plaintiff, | **OPPOSITION TO MOTION FOR ATTORNEY FEES; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| $451,624.51 SEIZED FROM FXDD ACCOUNT NO. '7807 AND $106,300.29 SEIZED FROM FXDD ACCOUNT NO. '7870, | DATE: July 10, 2015<br>TIME: 2:30 p.m.<br>CTRM: 10A |
| Defendants. | |

//

//

//

//

//

//

//

//

## I. INTRODUCTION

Plaintiff United States of America (the "government") does not object to the calculation of rates and hours submitted by the Cornerstone Claimants in support of their motion for attorney's fees pursuant to 28 U.S.C. Section 2465. The government respectfully suggests, however, that this Court should deny the motion for attorneys' fees because:

- It is inequitable to apply literally the provisions of Section 2465 where, as here, it is undisputed that the two groups of competing claimants are both victims of a fraud committed by a non-claimant and the government's goal—-after seizing the defendant funds for the benefit of the victims--has been to return the seized funds to the victims in an equitable manner; and
- The government's actions in seizing and seeking to return the seized funds to the victims of the fraud in an equitable matter constitutes substantial compliance with the provisions of Section 2465 governing claims asserted by competing claimants.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In July 17, 2013, a grand jury in this District indicted Lynn Bogart on three counts of mail fraud and one count of wire fraud. United States v. Bogart, No. SA CR 13-0122. Dkt. 1 at 4. On August 14, 2013, Bogart was arrested by FBI agents in this District. At the time of his arrest, Bogart told the agents that a group of individuals had invested approximately $520,000 with him under the name of Cornerstone Equity Fund (the "Cornerstone Investors" or "Cornerstone Claimants"). Bogart stated that the invested funds were on deposit in accounts at FXDirectDealer, LLC

("FXDD"). Dkt. 1 at 4. On August 16, 2013, the government seized $451,624.51 from FXDD Account No. '7807 and $106,300.29 from FXDD Account No. '7870 pursuant to a federal seizure warrant. On January 13, 2014, the government filed a civil forfeiture complaint against the funds seized on August 16 (the "defendant funds"). Dkt. 1. The complaint alleged that (A) Bogart had told the FBI that the funds in the FXDD accounts (that were subsequently seized) had been obtained from Cornerstone; and (B) in 2008 Bogart fraudulently obtained over $1 million from a group of individual investors not associated with Cornerstone (the "Non-Cornerstone Investors" or "Non-Cornerstone Claimants"). Dkt. 1 at 3-4. The complaint alleged that the defendant funds were subject to forfeiture as the proceeds of wire fraud and mail fraud. Dkt. 1 at 5. Pursuant to stipulation, discovery in the case was stayed until late 2014 due the pending criminal case against Bogart.

Both the Cornerstone Investors and the Non-Cornerstone Investors filed claims and answers. Dkt. 9-13, 15-17, 30-34, 75-77 (claims and amended claims); 18, 19, 22-24, 40-44 (answers). Bogart failed to file a claim or answer. The government has consistently stated that its goal in this action was to return the money to the victims of Bogart's fraud once the relative entitlements of the competing claimants were established.

On January 7, 2015, the Cornerstone claimants filed a motion for summary judgment. Dkt. 65. In their motion, the Cornerstone claimants asserted that they were innocent owners of the defendant funds pursuant to 18 U.S.C. Section 983(d), that only the funds of the Cornerstone Claimants were deposited in the FXDD accounts from which the defendant funds were seized, and that the defendant funds

were subject to a constructive trust and not subject to forfeiture. Dkt. 65-1 at 11-16.

On February 6, 2015, the Non-Cornerstone Claimants filed their opposition to the summary judgment motion. Dkt. 66. In their opposition, the Non-Cornerstone Claimants asserted that a constructive trust cannot be imposed where there are claims from multiple victims similarly situated; and that no constructive trust existed because the Cornerstone funds had been commingled with funds that Bogart had received from the Non-Cornerstone Claimants. Dkt. 66 at 6-12. The Non-Cornerstone Claimants also requested time to conduct additional discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Dkt. 66 at 17.

On February 18, 2015, this Court continued the hearing on the summary judgment motion to May 8, 2015, in order to give the Non-Cornerstone Claimants additional time to conduct discovery "regarding the funds transferred to and from the relevant accounts in this action." Dkt. 79 at 2. The Court ordered the Non-Cornerstone Claimants to supplement their opposition to the summary judgment motion by April 17, 2015. Id.

On May 5, 2015, this Court issued an order granting the motion for summary judgment in favor of the Cornerstone Claimants on their constructive trust theory. Dkt. 89. This Court did not specifically address the issue whether the Cornerstone Claimants and the Non-Cornerstone Claimants were similarly situated. Judgment was entered on May 12, 2015. Dkt. 94.

**III. THIS COURT SHOULD DENY THE CORNERSTONE CLAIMANTS' REQUEST FOR ATTORNEY'S FEES.**

As the Cornerstone Claimants point out, 28 U.S.C. Section 2465 provides for an award of attorney's fees to a claimant who

"substantially prevails" in a civil forfeiture action. Congress enacted Section 2465 as part of the Civil Asset Forfeiture Reform Act ("CAFRA") in order to allow innocent owners to "make themselves whole" after "wrongful government seizures." United States v. One Lincoln Navigator, 328 F.3d 1011, 1012 (8th Cir. 2003). The purposes of CAFRA are not served by an award of attorney's fees in this case, where the government acted properly in seizing from Bogart what are indisputably proceeds of fraud and then sought to return the funds to all of the victims of the fraud.[1] In fact, Congress sought to insulate the government from liability for attorney's fees in cases involving multiple claimants where one or more claimants prevailed over the others. Specifically, Section 2465 provides that:

> If there are multiple claims to the same property, the United States shall not be liable for costs and attorneys fees associated with any such claim if the United States—
> 
> (i) promptly recognizes such claim;
> 
> (ii) promptly returns the interest of the claimant in the property to the claimant, if the property can be divided without difficulty <u>and there are no competing claims to that portion of the property</u>;
> 
> (iii) does not cause the claimant to incur additional, reasonable costs or fees; and
> 
> (iv) prevails in obtaining forfeiture with respect to one or more of the other claims.

---

[1] Cornerstone does not, and cannot, assert that it is the victim of a "wrongful government seizure" since if the government had not seized the defendant funds Bogart in all likelihood would have dissipated them by now, leaving Cornerstone with nothing.

5

28 U.S.C. § 2465(b)(2)(C)(emphasis added).  As explained more fully below, the conditions that Congress established in Section 2465(b)(2)(C)(i-iv) were intended to apply to cases involving competing claims asserted by innocent and non-innocent claimants.  An example of such a case is <u>United States v. Khan</u>, 497 F.3d 204 (2d Cir. 2007), which involved "three convicted claimants and those who had contributed money to one of them . . . ."  <u>Id.</u> at 207.  Where, as here, the only claimants are innocent and the potential non-innocent claimant has not asserted a claim (or has explicitly abandoned his claim and admitted that the facts establishing the forfeitability of the defendant funds), the conditions set forth in Section 2465(b)(2)(C) are, as a practical matter, impossible for the government to meet, since at the early stages of the litigation the government does not have enough information to identify which group of claimants deserves to recover.[2]  Specifically, the government was not and is not in a position to "recognize" the claim of the Cornerstone Claimants (as provided in Section 2465(b)(2)(C)(i)) without rejecting the claims of the Non-Cornerstone Claimants, who presented evidence that they were "similarly situated" to the Cornerstone Claimants.[3]  Recognizing

---

[2] It was for this reason that the government requested a two-week continuation of the hearing on Cornerstone's summary judgment motion.  Dkt. 67.

[3] In <u>C.F.T.C. v. Walsh</u>, 712 F.3d 735 (2d Cir. 2013), the Second Circuit held that competing claimants were similarly situated where

- they had the "same [investment] goal[s]";
- they were "solicited as investors by the same defendants";
- they were "treated economically the same in the defendants'. . . account statements";    [Continued on next page]

the constructive trust claim asserted by the Cornerstone Claimants under such circumstances would have been inconsistent with the rule that it is inequitable to impose a constructive trust over the proceeds of fraud in favor of one claimant (as opposed to pro-rata distribution of the proceeds among all claimants). United States v. Real Property Located at 13328 and 13324 State Highway 75, 89 F.3d 551, 553 (9th Cir. 1996); accord S.E.C. v. Capital Consultants, Inc., 397 F.3d 733, 747 (9th Cir. 2005).[4] For the same reasons, the government was not and is not in a position to "obtain[] forfeiture" (Section 2465(b)(2)(C)(iv)) with respect to the Non-Cornerstone claimants.[5]

The facts set forth above demonstrate that the literal application of Section 2465 under the circumstances here will lead to the government being required to pay for the attorney fees of a

---

[Continued from previous page]

- assets were commingled;
- the fraud scheme was "ongoing"; and
- the commingled assets could not be unraveled reliably.

Id. at 754. Not all of these factors were considered by the Court here.

[4] In Khan, by contrast, the government was able to obtain forfeiture of a portion of the money claimed by the criminal claimants. 497 F.3d at 207-08. With respect to the innocent claimants, the court held that the government acted with "reasonable dispatch" in returning the seized funds to them, and noted that a premature return of funds to one group of innocent claimants would have meant that the government would have "lack[ed] sufficient funds to pay the remaining [innocent] claimants." Id. at 211.

[5] The government attempted to obtain forfeiture of Bogart's potential interest in the defendant funds (Dkt. 52 & 59), but the Court declined to find that his interest was forfeitable. Dkt. 37 & 57.

victim who would have recovered no money at all had the government not acted to seize the funds to which that victim has asserted a claim. Moreover, it requires the government to fund the efforts of a group of victims that received the entirety of the defendant funds while leaving the remaining victims--who are no less deserving—with no recovery and with responsibility for their own fees. The government respectfully suggests that Congress did not intend for such a result to occur when it enacted Section 2465(b)(2)(C), and this Court should not interpret the statute in a way that will lead to such a result. See generally United States v. Nguyen, 73 F.3d 887, 893 (9th Cir. 1995)(in interpreting a statute, "absurd results are to be avoided.")(citation omitted). This is particularly true where the government has at all times stated that its goal is to make the victims whole in an equitable manner, which is the same goal Congress had in mind when it enacted the attorney fee provisions of CAFRA in the first place. See Lincoln Navigator, supra, 328 F.3d 1012. Because the underlying purpose of Section 2465(b)(2)(C) has been satisfied, the Court should find that the government's actions here constitute substantial compliance with the statute and on that basis should deny Cornerstone's motion for attorneys' fees.[6] See generally Newell v. Ruiz, 286 F.3d 166, 171 (3d Cir. 2002)("substantial compliance" doctrine applies where underlying purpose of statute has been satisfied).

///

---

[6] Cornerstone failed to address Section 2465(b)(2)(C) despite its obvious relevance here.

8

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny the Motion of the Cornerstone Claimants for attorney's fees.

Dated: June 12, 2015

Respectfully submitted,

STEPHANIE YONEKURA
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

        /s/
FRANK D. KORTUM
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
United States of America